# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>the entire premises and curtilage located at 21 Sunset Drive, St. Michaels, Arizona 86511, and any vehicle found at the premises with a nexus to the property. | Case No. 25-4205 MB |

**SEARCH AND SEIZURE WARRANT**

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before   June 15, 2025   *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.  ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for  30  days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____

*Camille D. Bibles* Digitally signed by Camille D. Bibles
Date: 2025.06.01 14:06:13 -07'00'

*Judge's signature*

City and state: <u>Flagstaff, Arizona</u>     <u>Honorable Camille D. Bibles, U.S. Magistrate Judge</u>
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is the entire premises and curtilage located at 21 Sunset Drive, St. Michaels, Arizona 86511, and any vehicle found at the premises with a nexus to the property. The property is further described as a single-story house with light colored siding and a tan roof. The property is located at GPS coordinates 35.6750273, -109.0671580.



**ATTACHMENT B**

*Property to be seized*

1. Any evidence of assault, including blood evidence, dried blood, and/or biological substances that appear to be blood, which may be in or on vehicles, inside or outside the house, on the ground or floors, walls, clothing, bedding, furniture, or items used to clean up same (such as cloth towels, washcloths, or paper towels, etc.).

2. Any biological evidence which may contain DNA evidence, which may be in or on vehicles, inside or outside the house, on the ground or floors, walls, clothing, bedding, furniture, or items used to clean up same (such as cloth towels, washcloths, or paper towels, etc.).

3. Any weapons or items that could be used as a weapon and pieces/parts of a weapon or ammunition/shell casings related to the assault investigation.

4. Indicia of occupancy and/or ownership of the home, including mail (e.g. bills) showing a person's address; ownership documents such as deeds, tax documents, or bills of sale; leases or rental documents, identification cards; and photographs of the owners and/or occupants.

5. Electronic devices.

6. Photographs and/or video of the property and the things seized.

In the event any of the property described in Attachment A is locked or otherwise secured, or the agents/officers encounter safes, locked cabinets, locked vehicles, and/or other secured containers and/or devices in/on the property described in Attachment A, the investigators may access the property, safe(s), vehicles, locked cabinet(s), or other secured containers and/or devices to search for evidence as described above.

Further, if the agents/officers deem it necessary to effectuate the search, the agents/officers may physically remove structural components or portions thereof (such as section of walls, flooring, or other surfaces) to preserve and secure evidence.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of the entire premises and curtilage located at 21 Sunset Drive, St. Michaels, Arizona 86511, and any vehicle found at the premises with a nexus to the property. | Case No. 25-4205 MB |
|---|---|

**APPLICATION FOR A SEARCH WARRANT**

I, Jonathan Legg, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1153, 113(a)(6) | Assault Resulting in Serious Bodily Injury |

The application is based on these facts:

**See attached Affidavit of Special Agent JONATHAN LEGG**

☒ Continued on the attached sheet.
☐ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Matthew D. Doyle
*MD*

JONATHAN LEGG
Digitally signed by JONATHAN LEGG
Date: 2025.06.01 14:01:25 -06'00'

*Applicant's Signature*

JONATHAN LEGG, FBI
*Printed name and title*

Sworn to telephonically and signed electronically.

Date: _____

City and state: Flagstaff, Arizona

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2025.06.01 14:05:27 -07'00'

*Judge's signature*

Honorable CAMILLE D. BIBLES, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

*Property to be searched*

The property to be searched is the entire premises and curtilage located at 21 Sunset Drive, St. Michaels, Arizona 86511, and any vehicle found at the premises with a nexus to the property. The property is further described as a single-story house with light colored siding and a tan roof. The property is located at GPS coordinates 35.6750273, -109.0671580.



## ATTACHMENT B

*Property to be seized*

1. Any evidence of assault, including blood evidence, dried blood, and/or biological substances that appear to be blood, which may be in or on vehicles, inside or outside the house, on the ground or floors, walls, clothing, bedding, furniture, or items used to clean up same (such as cloth towels, washcloths, or paper towels, etc.).

2. Any biological evidence which may contain DNA evidence, which may be in or on vehicles, inside or outside the house, on the ground or floors, walls, clothing, bedding, furniture, or items used to clean up same (such as cloth towels, washcloths, or paper towels, etc.).

3. Any weapons or items that could be used as a weapon and pieces/parts of a weapon or ammunition/shell casings related to the assault investigation.

4. Indicia of occupancy and/or ownership of the home, including mail (e.g. bills) showing a person's address; ownership documents such as deeds, tax documents, or bills of sale; leases or rental documents, identification cards; and photographs of the owners and/or occupants.

5. Electronic devices.

6. Photographs and/or video of the property and the things seized.

In the event any of the property described in Attachment A is locked or otherwise secured, or the agents/officers encounter safes, locked cabinets, locked vehicles, and/or other secured containers and/or devices in/on the property described in Attachment A, the investigators may access the property, safe(s), vehicles, locked cabinet(s), or other secured containers and/or devices to search for evidence as described above.

-2-

Further, if the agents/officers deem it necessary to effectuate the search, the agents/officers may physically remove structural components or portions thereof (such as section of walls, flooring, or other surfaces) to preserve and secure evidence.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jonathan Legg, Special Agent of the Federal Bureau of Investigation, state under oath as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at 21 Sunset Drive, St. Michael's, Arizona 86511 (hereinafter the "**Subject Premises**"), as further described in Attachment A, in order to search for and seize the items outlined in Attachment B, which represent evidence, fruits, and/or instrumentalities of the criminal violations further described below.

2. Your affiant is a Special Agent with the Federal Bureau of Investigation ("FBI") and has been since May 2017. Your affiant is currently assigned to the Gallup, New Mexico, Resident Agency of the Phoenix, Arizona, FBI Field Division. In the course of my official duties, your affiant is charged with the investigation of crimes occurring on the Navajo Nation Indian Reservation in the District of Arizona. The Navajo Nation Tribe is a federally recognized Indian tribe. I am an investigative law enforcement officer of the United States, and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 of the United States Code.

3. The statements contained in this Affidavit are based on information derived from your Affiant's training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; and information provided by witnesses.

4. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

### II. BASIS FOR PROBABLE CAUSE

5. On June 1, 2025, Navajo Nation Police Department ("NNPD") officers were called to 21 Sunset Drive, St. Michaels, Arizona, 86511 (the "**Subject Premises**"), which

is the residence of N.J., with a report that N.J. had been assaulted and needed medical assistance.

6. NNPD officers arrived at the **Subject Premises** and found N.J. laying on the floor unconscious with visible injuries, including three lacerations to her face. Emergency Medical Services were called and N.J. was transported to the hospital in Ft. Defiance, Arizona. Outside the **Subject Premises**, NNPD officers encountered Savon YAZZIE, an Indian male, with blood on his person and injuries, which appeared to be recent, to his face and hands.

7. A NNPD officer went to Ft. Defiance hospital to attempt an interview with N.J. Upon arrival, N.J. was unconscious and receiving chest compressions and medications, which successfully revived her. At this time, the officer was able to talk to N.J.

8. N.J. identified an individual named YAZZIE as her attacker. N.J. reported that when she came home earlier that morning, YAZZIE was hiding in her closet and jumped out and attacked her. N.J. knew YAZZIE to live near the **Subject Premises** in "the house at the top of the hill with drug dealers." NNPD officers knew YAZZIE to live in a house which matched N.J.'s description. The NNPD officer could not continue to interview N.J. because she once again went unconscious.

9. NNPD officers spoke with Stephanie CHISCHILLY, who reported that on the morning of June 1, 2025, she was at a residence near the **Subject Premises** with Sha'neil OWENS, Reece BENALLY, and YAZZIE. BENALLY left to get his bicycle from the **Subject Premises**, returned shortly thereafter, and began fighting with YAZZIE. BENALLY yelled, "Why did you do that to Coco?" Coco is a known alias of N.J.

10. CHISCHILLY walked to the **Subject Premises** to find N.J. CHISCHILLY yelled for N.J., but after getting no response, CHISCHILLY entered the **Subject Premises** to find N.J. laying on the floor unconscious and bleeding. CHISCHILLY called the police.

III. <u>**ITEMS TO BE SEIZED**</u>

11. Based on the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found at the **Subject**

**Premises**.

12. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

   a. Assaults such as the one described above often involve weapons used to commit the assault, including firearms, knives, and blunt force objects. DNA evidence, as well as fingerprints, are often left behind on the weapons used to commit the assault.

   b. DNA evidence and fingerprints can also be left behind on clothing and other objects following an assault. Based upon my experience, suspects often leave behind evidence from the commission of the offenses they commit.

   c. Additionally, based on your affiant's training and experience, I also know that those involved in committing a crime and then fleeing the scene may use computers, cellular telephones, and other electronic devices to aid in their escape, or communicate information related to the crime they committed. This includes but is not limited to text message communications, telephone calls, and location information.

   d. Security cameras and related components, including any computer, device, or storage medium capable of storing security camera footage or other security camera or security system records or information.

   e. Whether within the contents of electronic devices or otherwise: video footage, photographs, and other records and information from security cameras or security systems.

   f. In addition to items which may constitute evidence, fruits and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the **Subject Premises**, including rent receipts, utility bills, telephone bills, addressed mail, personal identification, keys, purchase receipts, sale receipts, photographs, vehicle

pink slips, and vehicle registration.

## IV. DIGITAL EVIDENCE STORED WITHIN ELECTRONIC STORAGE MEDIA

13. As described in Attachment B, this application seeks permission to search for records that might be found in or on the **Subject Premises**, in whatever form they are found, including data stored on a computer, cellular telephone, tablet, or other media storage device, such as a thumb drive, CD-ROM, DVD, Blu Ray disk, memory card, or SIM card (hereafter collectively referred to as "electronic storage media"). Thus, the warrant applied for would authorize the seizure of all electronic storage media found in or on the **Subject Premises** and, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

14. *Probable cause.* Your Affiant submits that if electronic storage media are found in or on the **Subject Premises**, there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on such media, for at least the following reasons:

   a. Your Affiant knows that when an individual uses certain electronic storage media, the electronic storage media may serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic storage media is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic storage media is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that electronic storage media used to commit a crime of this type may contain: data that is evidence of how the electronic storage media was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

   b. Based on my knowledge, training, and experience, your Affiant knows that electronic storage media contain electronically stored data, including, but not limited to, records related to communications made to or from the electronic storage media, such as the associated telephone numbers or account identifiers, the dates and times of the

- 4 -

communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

        c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto an electronic storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on an electronic storage medium, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

        d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

        e.    As previously set forth in this Affidavit, those involved in committing a crime and then fleeing the scene may use computers, cellular telephones, and other electronic devices to aid in their escape, or communicate information related to the crime they committed.. Therefore, your Affiant believes that evidence of criminal activity will be found on any electronic storage media found at the **Subject Premises** and that the electronic storage media constitute instrumentalities of the criminal activity.

    15.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the electronic storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence

will be found on any electronic storage media located in or on the **Subject Premises** because:

      a.    Data on a storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

      b.    As explained herein, information stored within electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the owner. Further, activity on an electronic storage medium can indicate how and when the storage medium was accessed or used. For example, as described herein, computers typically contain information that log: computer

- 6 -

user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on an electronic storage medium may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the existence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera) not previously identified.  The geographic and timeline information described herein may either inculpate or exculpate the user of the electronic storage medium.  Last, information stored within an electronic storage medium may provide relevant insight into the user's state of mind as it relates to the offense under investigation.  For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

       c.     A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

       d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on an electronic storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, electronic storage medium evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on one electronic storage medium is evidence may

depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how an electronic storage medium was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

  16. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on electronic storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

   a. *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine electronic storage media to obtain evidence. Electronic storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b. *Technical requirements*. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the electronic storage media off-site and reviewing it in a controlled environment allows for a thorough examination with the proper tools and knowledge.

    c. *Variety of forms of electronic media*. Records sought under this warrant could be stored in a variety of electronic storage media formats that may require off-site reviewing with specialized forensic tools.

  17. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit seizing, imaging, or otherwise copying electronic storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

///

///

///

///

///

## V. CONCLUSION

18. Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and/or instrumentalities of violations of: 18 U.S.C. §§ 113(a)(6), 1153 (CIR-Assault Resulting in Serious Bodily Injury), are likely to be found at the **Subject Premises**, which is further described in Attachment A.

JONATHAN LEGG
Digitally signed by JONATHAN LEGG
Date: 2025.06.01 14:02:16 -06'00'

Special Agent JONATHAN LEGG
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to telephonically this 1st day of June, 2025.

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2025.06.01 14:04:27 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge

- 10 -